NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0417n.06

No. 12-3662

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Apr 26, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| MATTHEW HOWARD SAFFELL, | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| Defendant-Appellant. | ) | |
| | ) | |

**Before:** **KEITH, COLE, and ROGERS, Circuit Judges.**

**PER CURIAM**. Defendant-Appellant Matthew Saffell, was charged with a single count of possession of child pornography. Following the denial of a motion to suppress the images of child pornography found in his home, he entered a conditional guilty plea. The district court subsequently entered judgment against him and sentenced him to twenty-four months of imprisonment, followed by five years of supervised release. Saffell appeals the district court's denial of the motion to suppress and the sentence imposed. For the reasons that follow, we **AFFIRM** the district court's judgment.

**BACKGROUND**

This criminal case began with a call from Jason Allen McGarry in October 2005. At the time, McGarry was a young man who had a criminal record, had served a prison term, and was facing new criminal charges for receiving stolen property. On October 20, 2005, Detective Ryan

1

Allar of the Belmont County Sheriff's Office re-arrested McGarry for domestic violence and child endangering. He was still facing the stolen property charges.

On October 24, 2005, McGarry was released from jail for the pending domestic violence offense. That night, Matthew Saffell—Petitioner in the present case—gave McGarry a ride home. The next day, October 25, 2005, McGarry reached out to Detective Allar and claimed that Saffell told him that he met a twelve-year-old girl on the Internet and that Saffell had videotaped himself having sex with her. Saffell contends that he is gay, however, and has never been with anyone of the opposite sex.

The Investigation

In the past, McGarry had provided information to the police in exchange for leniency on pending charges. McGarry had provided accurate information to Detective Allar on about five to eight previous occasions. After calling Allar, McGarry entered into a cooperation agreement with the Sheriff's Department and started recording conversations with Saffell. The recorded conversations repeatedly involved discussions about sexual relations and often included discussions between McGarry and Saffell regarding the arrangement of an underage sexual partner for Saffell. McGarry recorded an October 25, 2005 conversation from a car ride and also recorded a series of phone calls thereafter.

Saffell and the Government dispute the nature of the conversations. Saffell contends that he is gay, was never interested in the opposite sex, and that McGarry "initiated an aggressive and persistent crusade to entrap Saffell into agreeing to meet with a fictitious thirteen-year[-]old female for sexual relations." There is an extensive record of the conversations between the two. While the parties characterize the meaning of the conversations differently, there are recurring themes.

2

For example, McGarry constantly initiated conversations with Saffell about sexual relations with young girls. Saffell made many statements about an attraction to young girls in response. At times when McGarry discussed an underage partner for Saffell, Saffell stated that he was scared and did not want to get in trouble. Saffell's focus seemed to be getting caught and not necessarily on a lack of interest. Another theme of the conversations has to do with Saffell's sexual interest in McGarry, the informant. Saffell typically tried to get McGarry to either expose himself to Saffell or get McGarry to describe his past sexual escapades. In one conversation, Saffell offered McGarry $20 to expose himself while Saffell touched himself.

There is also a conversation about Saffell's pornography in the recordings. During the conversation Saffell mentioned that he got pornography on the "Internet that would blow people's minds." Saffell said he got turned on when "watching." In another conversation, McGarry talked about someone that taped a young couple. Saffell responded, "Bet you can't get a tape of that."

Once McGarry came to terms with Saffell's being more interested in men, McGarry mentioned arranging a meeting with a fictitious young boy, Tad. During the conversation Saffell asked McGarry if he would get in trouble with the age issue. McGarry responded, "No, no, no, no man you're straight." Saffell said, "Ok . . . Well he is eighteen so, it's cool."

On November 21, 2005, McGarry told Saffell to meet him at 5:15 p.m. near a store. Detective Allar was there at the meeting spot and arrested Saffell.

Search Warrant

Following the arrest, Detective Allar prepared an affidavit for a search warrant for Saffell's home. The affidavit stated:

3

On 10/25/05 at around 4:30 P.M. I was contacted by . . . McGarry . . . regarding Matthew Saffell. [McGarry] has given me information in the past of various criminal acts that have always proven to be truthful and reliable.

McGarry advised me that he was offered a ride home by . . . Saffell. McGarry stated that Saffell offered him money to engage in sexual acts with McGarry's girlfriend if Saffell could watch. Saffell advised McGarry that he was a sexual pervert and had met a 12 year old girl. I supplied McGarry with a digital recorder . . . . I have listened to these recording[s] and the recording[s include] Saffell [talking to] McGarry about purchasing a young girl to pull a train on. "To pull a train" is slang for having sexual intercourse with several partners in a line one after another. Another recorded conversation has Saffell telling McGarry about the girl he had sex with a couple days ago. Saffell also asks McGarry to engage in sexual activity for twenty dollars. McGarry eventually agrees to tell Saffell about his past sexual encounters as Saffell masturbated in front of McGarry. McGarry stated that Saffell had a bag of sex toys and removed a bottle of lubricant and applied it to his penis while he masturbated. Saffell advised McGarry that he has in his resident [sic] pornographic materials that would blow a normal person[']s mind. This statement enforces McGarry[']s statement to me that Saffell had advised McGarry that he makes pornographic movies with minors.

McGarry has been in constant contact with me since 10/25/2005. . . Saffell wants McGarry to find a young boy and girl he could have sex with. Saffell offers to pay McGarry and the young boy for the sex. McGarry advised Saffell that he knew a 13 year old boy and a 12 year old girl who [were] interested. Saffell stated that he would pay fifty dollars for a sexual encounter. The encounter was set up and Saffell was arrested at the meeting place on this date, 11/21/2005. Due to the above statements I believe that Matthew [Saffell's] residence contains pornographic materials depicting children engaged in sexual acts.

Aff. at 52. It also noted that Detective Allar "believes and has good cause to believe that said property . . . is concealed in 105 Morristown Street . . . being the residence of Matthew Saffell, being a [g]rayish colored single story house with white trim, and a white door facing Morristown Street."

The execution of the search warrant resulted in the seizure of seventy-nine VHS cassette tapes containing suspected pornography, a floppy disc, and a computer. The tapes did not contain any illegal material. The computer hard drive and the disc, however, had suspected child pornography images.

4

On November 23, 2005, Detective Allar charged Saffell with importuning of a minor, a state felony charge, in the Belmont County Court. The case was dismissed, upon the government's motion.

Federal Charge and Conviction

Nearly five years later, a federal grand jury returned an indictment for possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). Saffell filed a motion to suppress the evidence collected from the execution of the search warrant that was issued by a state court judge. Defendant argued for suppression of the physical evidence collected from his home for lack of probable cause, and lack of a nexus between child pornography and Saffell's residence. He also argued that Detective Allar's affidavit contained false or reckless statements or material omissions, requiring a *Franks* hearing to be held. The district court held a *Franks* hearing at Defendant's request, but did not decide whether he had made a substantial showing of intentional or reckless falsity or materiality. The district court ultimately denied Saffell's motion to suppress.

Plea and Sentencing

Following the denial of Saffell's motion to suppress, he entered into a plea agreement. The district court held a sentencing hearing on October 21, 2011.[1] Saffell's guideline range was 46–57 months. During the hearing, the district judge expressed concerns with sentencing policy as it relates to child pornography cases and Saffell specifically. Following the explanation, the district court imposed a 24-month term of imprisonment.

---

[1]There were a total of three sentencing hearings on October 21, 2011, November 10, 2011, and May 17, 2012.

## DISCUSSION

### I.     Motion to Suppress

Saffell appeals the district court's denial of his motion to suppress the digital images of child pornography found in his home. Saffell presents two main points on appeal: 1) that Detective Allar's affidavit failed to establish probable cause to search his home for child pornography; and 2) that the search of his home was invalid due to alleged false statements and material omissions from Detective Allar's affidavit.

#### A.     Probable Cause

Saffell raises three issues on appeal to support his argument that Detective Allar's affidavit was insufficient to establish probable cause to search Saffell's home for child pornography. First, Saffell argues that the affidavit failed to establish a nexus between him and his home. Second, Saffell argues that the affidavit failed to establish a "substantial basis" for the state court magistrate judge to conclude that "pornographic materials depicting children engaged in sexual acts" would be found at his home. Third, he argues that the affidavit was stale as a matter of law because it failed to provide a time frame for when the alleged videotaping of the underage girl occurred. A careful review of Saffell's arguments shows that the affidavit was sufficient to establish the requisite probable cause.

"This Court reviews a district court's decision on a motion to suppress under two standards. Findings of fact are upheld unless clearly erroneous, while conclusions of law are reviewed *de novo*." *United States v. Jenkins*, 396 F.3d 751, 757 (6th Cir. 2005) (internal quotation omitted). "A factual finding is clearly erroneous when a court, on reviewing the evidence, is left with the definite and firm conviction that a mistake has been committed." *United States v. Gunter*, 551 F.3d 472, 479 (6th Cir.

6

2009). "If the district court denied the motion to suppress, then we must 'view the evidence in the light most favorable to the government.'" *United States v. Stubblefield*, 682 F.3d 502, 505 (6th Cir. 2012) (quoting *United States v. Smith*, 549 F.3d 355, 359 (6th Cir. 2008)).

The Fourth Amendment of the Constitution states: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, support by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. In determining whether an affidavit is sufficient to establish probable cause:

> [t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.

*Illinois v. Gates*, 462 U.S. 213, 238–39 (1983) (internal quotation marks and citation omitted).

Contrary to Saffell's argument, the affidavit was sufficient to establish a connection between Saffell and the premises to be searched. Saffell argues that since the affidavit did not state exactly how or why Detective Allar knew that the 105 Morristown Street address was Saffell's home, the affidavit lacked the requisite nexus to connect him to the home. We disagree.

Saffell relies on the case of *United States v. Laughton*, 409 F.3d 744 (6th Cir. 2005), for the proposition that the affidavit was insufficient. In *Laughton*, we held that an affidavit that "failed to indicate any connection between the defendant and . . . any of the criminal activity that occurred there" did not provide a substantial basis for concluding that there was probable cause to issue the warrant. *Id.* at 747–48.

7

The present situation is not one, like *Laughton*, where there was a failure "to indicate any connection between the defendant" and the premises to be searched. In this case, Detective Allar's affidavit was based on an investigation, relying on information from an informant who was in contact with Saffell daily. The affidavit states that McGarry was an informant that "ha[s] always proven to be truthful and reliable." The affidavit also mentions encounters between the informant and Saffell, stating that the two had spent time together and had talked about pornography Saffell had in his residence. This close relationship between McGarry and Saffell would support the conclusion that McGarry knew where Saffell lived and that there was potentially illegal pornography in his home.

The residence was described in the affidavit as a "[g]rayish colored single story house with white trim, and a white door facing Morristown Street." Detective Allar identified the address as "the residence of Matthew Saffell." These circumstances support the conclusion that Detective Allar had information that would lead him to the conclusion that the address was actually Saffell's home. The magistrate judge made a practical, common-sense decision that the detective was sure that the house to be searched was actually Saffell's home. Reversal on this issue is not warranted.

Saffell also argues that the affidavit "failed to establish a 'substantial basis' for the issuing magistrate to conclude that 'pornographic materials depicting children engaged in sexual acts' would be found on a computer or computer diskette located in [his] residence." The district court correctly rejected Saffell's argument.

Saffell argues that there are two cases supporting his position that the allegations in the affidavit failed to establish a substantial basis upon which the magistrate judge could conclude that he might have had child pornography on a computer or disks in his home. He relies on *United States*

8

*v. Hodson*, 543 F.3d 286 (6th Cir. 2008) and *United States v. Doyle*, 650 F.3d 460 (4th Cir. 2011). In both of those cases the courts held that the allegations in the affidavit would have supported a warrant to search for evidence of child molestation, but not for evidence of the entirely different crime of possessing child pornography. *Hodson*, 543 F.3d at 292; *Doyle*, 650 F.3d at 473.

In *Hodson*, a detective from the New Jersey Sheriff's Department Internet Crimes Section began chatting undercover with the defendant over AOL Instant Messenger. *Hodson*, 543 F.3d at 287. During the chats the defendant admitted to the undercover detective that he liked looking at his young sons naked and that he had also had sex with his nephew, who was only seven years old. He also said he wanted to perform oral sex on the presumptive twelve-year old boy with whom he was chatting (actually the undercover detective). The detective prepared an affidavit based on the conversations and requested a warrant to search the defendant's home from the magistrate. A warrant to search for evidence of child pornography was granted by the magistrate. *Id.* at 287–88. This Court held that the affidavit was sufficient to establish probable cause to search for evidence of child molestation but not for child pornography. *Id.* at 292. The Court reasoned that the search warrant was invalid because the affidavit contained "no information whatsoever with regard to [the defendant's] engaging in any aspect of child pornography, or any basis for believing that individuals who engage in child molestation are likely also to possess child pornography." *Id.* at 289, 293–94.

The other case relied on by Saffell is a Fourth Circuit case, *Doyle*. In *Doyle*, three minor children came forward with allegations that Doyle sexually abused them at his home. *Doyle*, 650 F.3d at 464–66. One child said that Doyle had shown the victim pictures of nude children. *Id.* at 464. The Fourth Circuit, citing *Hodson*, held that the evidence in the affidavit was insufficient to support a search for evidence of child pornography. *Id.* at 472. The court reasoned that a nude

picture of a child would not necessarily mean that the picture was child pornography. The court reasoned that the mention of nude pictures was the only thing in the affidavit that could have related to child pornography and that the solitary mention was insufficient to establish probable cause to search for child pornography. *Id.*

Here, Saffell's case is distinguishable from both *Hodson* and *Doyle*. Detective Allar's affidavit stated that a reliable informant told him that "he met a 12 year old girl on the internet and had made pornographic videos of sexual encounters between himself and the 12 year old girl." This statement alone makes the present case distinguishable from *Hodson* and *Doyle*. Because the affidavit mentions Saffell using the internet to meet the young girl and also that he made a video of himself having sex with the young girl, a magistrate judge could conclude that he likely used his home computer to arrange his encounter. Unlike *Doyle*, there was not simply an allegation that Saffell had a nude picture of the young girl. The allegation was that he had a videotape of himself having sex with her. The magistrate could also reasonably conclude from the statement that since Saffell made a video of himself having sex with a child, he also liked to view child pornography. The magistrate judge made a common-sense determination that the videos could have been stored on Saffell's computer at home.

In addition to the specific allegations in the information, the affidavit offers additional facts that supported the magistrate's finding of probable cause. The affidavit refers to Saffell's continued interest in young girls and pornography at his house. Those allegations were in addition to the allegation that he taped himself having sex with the young girl he met on the internet, bolstering the basis for the warrant. The facts in the affidavit as a whole established a substantial basis for the

magistrate to conclude that child pornography would likely be found on Saffell's computer at his home. The district court properly rejected Saffell's argument.

Moreover, Saffell's argument that the information in the affidavit was stale as a matter of law fails. Saffell argues that because there was no time frame mentioned as to when he allegedly videotaped himself having sex with the young girl, the affidavit could not support a finding of probable cause. The district court properly rejected his argument.

"[I]n seeking to establish probable cause to obtain a search warrant, the affidavit may not employ 'stale' information, and whether information is stale depends on the 'inherent nature of the crime.'" *United States v. Brooks*, 594 F.3d 488, 493 (6th Cir. 2010) (internal citation omitted). Courts consider four factors in determining whether information is stale. *See United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009).

Saffell argues that the *Frechette* factors are inapplicable because of the failure to state a time frame for his alleged videotaping of himself having sex with the young girl. Saffell relies on an order from the Western District of Tennessee to support his argument, *United States v. Haney*, No. 07-cr-20313-MI., 2012 WL 1657109 (W.D. Tenn. May 10, 2012) (order granting motion to suppress). In *Haney*, the search warrant in question was based on statements from an alleged victim of sexual abuse. *Id.* at *1. The affidavit contained no time frame as to when the alleged abuse occurred or any indication that the defendant was involved in any continued illegal activity. *Id.* The court held that the affidavit was based upon stale information and the warrant was, therefore, invalid. *Id.* at *2. The court reasoned that "[t]he affidavit [was] deficient because it gave *no indication* of when the [illegal acts took place]. In the absence of any temporal reference point, the affidavit failed to establish probable cause." *Id.* (emphasis in original).

11

Here, Saffell's case is not one in which there was "no indication" of a time frame. Saffell is correct that there was no specific time frame given as to when he made the alleged videotape of the young girl. However, the affidavit contained other information that did have a time frame to corroborate the allegation. The affidavit states that McGarry, the reliable informant, had been in contact with Saffell on a daily basis and that he had been in contact with Detective Allar since October 25, 2005—just about a month before the affidavit was filed. The additional information, provided in that month, corroborated the allegation about the videotaping (i.e. Saffell's interest in underage sexual partners and pornographic materials in his home). The fact that there was no specific time frame regarding the alleged videotaping is of no consequence with respect to staleness because the more recent information that was provided with a time frame corroborated the allegation. *See United States v. Henson*, 848 F.2d 1374, 1381–82 (6th Cir. 1988) (holding that where recent information corroborates stale information, probable cause may be found). The lack of a specific date as to one allegation is remedied by the inclusion of more recent corroborating information. The information in the affidavit was not stale.

Because all of Saffell's arguments fail as to the sufficiency of the affidavit, reversal is unwarranted as to probable cause within the four corners of the affidavit.

**B.      Affidavit Omissions**

Saffell argues that Detective Allar deliberately or recklessly omitted information from the affidavit that "would have cast grave doubt on the veracity and reliability of the informant's allegation that Saffell told him" that he videotaped himself having sex with the young girl. The district court rejected this argument—following a *Franks* hearing—finding that the omissions were not material to the finding of probable cause and the omissions would not have cast doubt on

12

Detective Allar's belief in the reliability or credibility of McGarry's information.[2]  We agree with

the district court's determination.

> At an evidentiary hearing held pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), the hearing court must strike from the warrant affidavit statements that the defendant can prove by a preponderance of the evidence to be both (a) materially false and (b) made with reckless or intentional disregard for their falsity.  If the redacted affidavit, purged of recklessly and materially false statements, no longer establishes probable cause, then the court must hold the resulting search warrant invalid.

*United States v. Elkins*, 300 F.3d 638, 649 (6th Cir. 2002) (internal citations omitted).  "[T]o be

constitutionally problematic, the material must have been deliberately or recklessly omitted and must

have *undermined* the showing of probable cause."  *United States v. Carpenter*, 360 F.3d 591, 596–97

(6th Cir. 2004) (emphasis in original).  This Court reviews the materiality of  the information *de

novo* and reviews whether the omissions are reckless or deliberate for clear error.  *Id.* at 594.

Saffell argues that Detective Allar recklessly or deliberately left out certain information from

the affidavit.  First, Saffell argues that Detective Allar should have included the fact that McGarry

was facing a new felony and misdemeanor charge at the time he approached Detective Allar to

cooperate.

Second, Saffell argues that Detective Allar deliberately left out information from the

conversations that would have shown that "Saffell's statements about having a sexual interest in

underage females were merely a ruse to appease an aggressive and persistent informant."  Saffell

argues that had the affidavit included that Saffell resisted propositions from McGarry about meeting

underage girls and shifted the conversations to his interest in McGarry, that the veracity and

---

[2]The district court noted in its opinion that it was unclear if Saffell had made the requisite preliminary showing to be afforded a *Franks* hearing—an issue we decline to address.  Even assuming the requisite showing was made to warrant a *Franks* hearing, Saffell's arguments fail because the omissions are not material to the finding of probable cause in this case.

reliability of the informant's accusation would have been diminished. Saffell argues that there should have been a mention of his repeated requests for someone of legal age. Saffell concludes that because of these omissions, Detective Allar knew that the affidavit was misleading and that this Court should reverse the district court's denial of his motion.

The omissions noted by Saffell are not the kind that would have clearly undermined assertions made in the affidavit. The district court correctly denied Saffell's motion to suppress. First, the information about the informant is immaterial. The informant was named in the affidavit. The affidavit noted that he had "always proven to be truthful and reliable." Furthermore, the allegation by the informant was corroborated by the recordings—Saffell undeniably stated his interest in young girls. Detective Allar had no reason to be concerned about the accuracy of the informant's information because he had access to the recordings that supported the allegation.

While there is strong support for Saffell's argument that the informant was aggressive and that Saffell was more interested in men, especially McGarry, the omissions from the record would not change the fact that Saffell repeatedly discussed an interest in young girls. While he did often mention being scared, as the Government argues, Saffell's fear was focused on being caught. Saffell asked for legal age partners, but there was ample discussion about underage partners. Furthermore, while the affidavit failed to mention that sometimes Saffell would change the subject from hooking up with a young girl to his interest in McGarry, the affidavit did not entirely fail to mention of Saffell's interest in men or in McGarry himself. The affidavit explicitly states that Saffell had offered McGarry to engage in sexual activity for twenty dollars and that Saffell had masturbated in front of McGarry. Saffell's expressed interest in McGarry is not inconsistent with his expressed interest in underage sexual partners. Even if Saffell thought that the boy he was meeting was

14

eighteen—as Saffell claims—the showing of probable cause would not have been undermined because there were also numerous previous conversations about a young boy. Saffell's comment that "he is eighteen, so it's cool" was a non sequitur in the conversation, so it is not convincing that he actually thought he was meeting up with an adult.

This is not a case where the omitted information contradicted the information provided by the informant. *See United States v. West*, 520 F.3d 604 (6th Cir. 2008) (holding that an affidavit was invalid for failure to mention facts that undermined the informant tip). The omissions here do not contradict or undermine the allegations. Even if the omitted information had been determined to be material, Saffell failed to demonstrate that any of the omitted information was deliberately or recklessly excluded. We, therefore, affirm the district court's judgment on this issue.

## II.     Reasonableness of Sentence

Saffell challenges the reasonableness of his sentence. Not long before Saffell's sentencing, another sentence imposed by the same court in another child pornography case had been reversed as substantively unreasonable. *See United States v. Bistline*, 665 F.3d 758 (6th Cir. 2012). Saffell was sentenced to a 24-month term of imprisonment, a term lower than the guideline range he faced of 46–52 months of imprisonment. Saffell argues that the district court interpreted the *Bistline* case too narrowly and was unaware that it could have imposed an even lower sentence, like it wished it could have, as stated on the record.

"[A]ll sentences—whether inside, just outside, or significantly outside the Guidelines range—[are reviewed] under a deferential abuse-of-discretion standard." *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007) (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007)).

15

Saffell's argument is without merit. Clearly the district court understood it could vary from the sentencing guidelines because the sentence ultimately imposed included a term of imprisonment that was almost half of the lower end of the guideline range. The district judge explained his concerns with the law, but still stated that he believed the sentence would "serve all of the legitimate purposes of sentencing in this case while recognizing some of the unique aspects of th[e] case." There is no indication that the court was confused. There was no abuse of discretion.

For the foregoing reasons, we AFFIRM the district court's judgment in full.